The PEOPLE of the State of
Colorado, Complainant,

v.

Kevin M. BRADY, Attorney–Respondent.

No. 96SA25.

Supreme Court of Colorado,
En Banc.

Sept. 23, 1996.

Okla. Stat. tit. 12, § 133 (1971).

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Assistant Disciplinary Counsel, Denver, for Complainant.

Kevin M. Brady, Denver, pro se.

## PER CURIAM.

The respondent in this lawyer discipline case seriously neglected a legal matter entrusted to him. He defaulted before the hearing board, which recommended that the respondent be privately censured along with the imposition of certain conditions. A hearing panel of the supreme court grievance committee approved the board's findings and conclusions, but modified the recommendation of discipline to a public censure because of the seriousness of the misconduct. The respondent has excepted to the panel's modification of discipline. We accept the panel's recommendation.

## I

The respondent was admitted to the Colorado bar in 1989. Because he defaulted before the hearing board, the allegations of fact contained in the formal complaint were deemed admitted. C.R.C.P. 241.13(b); *People v. Barr*, 855 P.2d 1386, 1386 (Colo.1993). Although he defaulted, the respondent appeared at the hearing and presented evidence with respect to the appropriate sanction. *See* C.R.C.P. 241.13(b). Based on the respondent's default and the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

Lisa and Jon Gray hired the respondent to handle a commercial lease dispute in Aspen, Colorado. The Grays live in California and had been unable to resolve a dispute with the property owner and her agent after the agent had allegedly approved a sublease of the property. After first trying to negotiate a settlement of the dispute, the respondent filed a complaint against the owner and her agent asking for specific performance and damages. The owner's lawyer and the agent's lawyer filed answers for their clients as well as counterclaims and crossclaims. The respondent answered the counterclaims for the Grays.

The owner's lawyer served her first set of discovery requests on the respondent on July 21, 1993. The discovery requests contained specific and extensive requests for admission. The respondent did not advise the Grays of these requests, did not provide responses to the discovery requests, and did not contact the other lawyer for an extension. On August 24, 1993, therefore, the owner's lawyer sent the respondent a letter pursuant to C.R.C.P. 121 informing him that because he had not responded to the discovery requests she intended to move for partial summary judgment against the Grays, and would ask the court to deem the requests for admission admitted. The respondent did not notify the Grays about the letter.

The owner's lawyer filed a motion for partial summary judgment on August 25, based on the argument that the unanswered requests for admission should be deemed admitted. *See* C.R.C.P. 36(a). The respondent did not reply to the motion and did not inform the Grays that the motion had been filed.

The agent's lawyer filed a motion for summary judgment on October 20, 1993. The respondent did not respond to this motion either, nor did he tell the Grays that it had been filed.

In November 1993 the respondent failed to appear at a status conference on behalf of the Grays. The court then granted the motions for summary judgment, with the result that the case was dismissed in favor of both defendants. The defendants' costs were assessed against the Grays.

After July 1993, the Grays had no further contact with the respondent, although they tried to contact him by telephone and by mail. They did not know that summary judgment had been granted and that costs were assessed against them until after they filed a request for investigation with the Office of Disciplinary Counsel.

Jon Gray testified at the hearing that after their request for investigation was filed, the respondent contacted him to discuss restitution. Gray stated that the respondent and he reached an agreement that requires the respondent to pay the Grays $15,000 in damages. The respondent paid $3,500 immediately and gave the Grays his promissory note for the balance. He is to pay them $315 per month until the full amount plus interest is paid. The board found that the respondent was current in his monthly payments.

The foregoing conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); R.P.C. 1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); and R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests).

## II

The hearing board recommended that the respondent receive a private censure in conjunction with certain conditions set forth below. The hearing panel found private discipline too lenient under the circumstances, and recommended that the respondent be publicly censured.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, a public censure "is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." *Id.* at 4.43. On the other hand, a private censure "is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client." *Id.* at 4.44. The Grays' injury reflected in the amount of restitution cannot be characterized as "little or no actual or poten-

tial injury to a client," and private discipline would ordinarily be foreclosed.

A private censure, because it does not inform the public about a lawyer's misconduct, "should be used only when the lawyer is negligent, when the ethical violation results in little or no injury to a client, the public, the legal system, or the profession, and when there is little or no likelihood of repetition." ABA Standards 2.6 (commentary).

*People v. Smith,* 769 P.2d 1078, 1080 (Colo. 1989).

In his exceptions, the respondent asserts that private discipline is nevertheless appropriate under the circumstances of this case. One of the respondent's reasons is that the panel should not have modified the board's recommendation of discipline while at the same time approving the board's factual findings and conclusions.

The hearing board found no aggravating factors, but concluded that the following mitigating factors were present: the respondent has no prior discipline, ABA *Standards* 9.32(a); he suffered from personal problems in the form of alcoholism, *id.* at 9.32(c); the respondent made a timely good faith effort to make restitution or to rectify the consequences of his misconduct, *id.* at 9.32(d); and he has expressed remorse for his conduct, *id.* at 9.32(*l*).

The hearing board also found in mitigation that the respondent had a physical or mental disability or impairment, and that he has engaged in intensive rehabilitation efforts. With respect to the "physical or mental disability," the board cited former ABA *Standard* 9.32(h) (1991), which was deleted in the 1992 supplement to the *Standards*. "Interim rehabilitation" as a mitigating factor was also deleted in 1992. The only physical or mental disability or impairment referred to in the hearing was the respondent's alcoholism, which the board addressed as follows: "The respondent testified that at the time of the underlying misconduct, he had a serious problem with alcohol which contributed to the misconduct. Respondent also testified that shortly after the misconduct he joined Alcoholics Anonymous and has not consumed alcohol in the last eighteen months."

The standard that the hearing board should have considered is current standard 9.32(i), which provides:

(i) mental disability or chemical dependency including *alcoholism* or drug abuse [may be considered as a mitigating factor] when:

(1) *there is medical evidence* that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA *Standards* 9.32(i) (Supp.1992) (emphasis added). The respondent introduced no *medical evidence* that he is affected by a chemical dependency, *see People v. Lefly*, 902 P.2d 361, 365 (Colo.1995) (limited medical evidence did not establish that the respondent suffered from a mental disability for purposes of 9.32(i)(1)); the hearing board stated that the use of alcohol *contributed* to the misconduct, not that it caused the misconduct; and there are no findings indicating that the respondent's recovery from alcoholism has been "demonstrated by a meaningful and sustained period of successful rehabilitation," *id.* at 9.32(i)(3); or that "recurrence of that misconduct is unlikely," *id.* at 9.32(i)(4). The board's findings therefore do not support the applicability of ABA *Standards* 9.32(i) (Supp.1992) as a mitigating factor.

Moreover, as the assistant disciplinary counsel points out, the respondent did not propose or attempt any form of restitution until after the Grays had filed their request for investigation with the Office of Disciplinary Counsel. The restitution agreement in this case is thus neither an aggravating nor mitigating factor. *Id.* at 9.4(a); *People v. Pittam*, 889 P.2d 678, 680 (Colo. 1995). Accepting the hearing board's *factual* findings as correct, therefore, the most significant relevant mitigating factors are the absence of prior discipline, *id.* at 9.32(a); and

the respondent's remorse, *id.* at 9.32(*l*). The respondent's personal problem with alcohol is less significant.

There was no evidence before the board of the way in which alcohol may have caused the misconduct. *See People v. Bertagnolli*, 922 P.2d 935, 939 (Colo.1996) (fact that lawyer had personal or emotional problems, without more specific knowledge of the nature of those problems reveals effectively nothing about the likelihood that the misconduct will not be repeated).

We reject the respondent's suggestion that public discipline is not appropriate because it would stigmatize a recovering alcoholic. Our overriding concern in discipline proceedings is to protect the public through the enforcement of professional standards of conduct. *See Bertagnolli*, 922 P.2d at 938–39. Under the specific facts of this case, private discipline would be inadequate to accomplish this. Accordingly, we accept the hearing panel's recommendation.

## III

Kevin M. Brady is hereby publicly censured. As provided in the board's and panel's recommendations, it is further ordered that the respondent:

(1) provide quarterly statements to the Office of Disciplinary Counsel evidencing that he is current on his restitution agreement with the Grays; and

(2) provide quarterly statements from his Alcoholics Anonymous sponsor establishing that he continues to participate actively in Alcoholics Anonymous for a period of two years from the date of this order.

The respondent is further ordered to pay the costs of this proceeding in the amount of $569.36 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202.